UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JOSEPH BALLARD                                    CIVIL ACTION

VERSUS
                                                  NO. 15-00627-BAJ-EWD
FELICIA HENDL

## RULING AND ORDER

Before the Court is the **Motion to Dismiss Verified Complaint and Second Amended Complaint (Doc. 39)** filed by Defendant Felicia Ann Hendl in her official capacity as Clerk of Court for the Twentieth Judicial District Court for the State of Louisiana ("20th JDC"). Plaintiff Joseph Ballard filed an opposition, and Defendant filed a reply.[1] For the following reasons, the **Motion to Dismiss Verified Complaint and Second Amended Complaint (Doc. 39)** is **GRANTED**.

I.      BACKGROUND

Ballard is an inmate at the Louisiana State Penitentiary at Angola located in West Feliciana Parish, Louisiana[2] Ballard sued Clerk Hendl, in her official capacity as Clerk of Court for the 20th JDC, for allegedly burdening his right to access the courts by unconstitutionally applying the Louisiana Prison Litigation Reform Act ("LPLRA").[3] Ballard also seeks a declaratory judgment that the LPLRA is unconstitutional as applied in the 20th JDC by Clerk Hendl.[4]

---

[1] Docs. 47 and 48.
[2] Doc. 34 at p. 1 and 3.
[3] *Id.* In his original Verified Complaint and First Amended Complaint, Ballard named the 20th JDC, Hon. William Carmichael, and Hendl as Defendants. Doc. 1 and Doc. 6. In his Second Amended Complaint, Ballard agreed to dismiss all claims against the 20th JDC and Hon. William Carmichael and has proceeded against Hendl only. Doc. 34.
[4] *Id.*

1

On September 29, 2006, Ballard filed a lawsuit in the 20th JDC alleging medical malpractice against several officials and employees with the Louisiana Department of Public Safety and Corrections ("LDPSC") and the Louisiana State Penitentiary at Angola ("Angola").[5] Ballard alleged that he lost the sight in his right eye because defendants in that case failed to correctly diagnose and timely treat him after he reported issues with his vision.[6] Contemporaneously with his *pro se* lawsuit, Ballard filed a motion for leave to proceed *in forma pauperis,* which was granted by the state court on October 2, 2006.[7] The order granting Ballard's request to proceed *in forma pauperis* relied on the LPLRA, which automatically stayed the proceeding until all court costs or fees due to the clerk were paid by the Plaintiff.[8] Ballard alleges that the order assessed $900.00 in advanced costs.[9] The LPLRA also contains a provision that if a prisoner fails to pay full court costs or fees within three years from the date they are incurred, the suit shall be dismissed without prejudice.[10]

The October 2, 2006 order granting Ballard *in forma pauperis* status also set a payment schedule requiring him to make monthly payments of 20 percent of the prior month's income credited to his prison account.[11] The order stipulated that

---

[5] *Id* at p. 4.
[6] *Id*. at p. 6.
[7] *Id*.
[8] *Id*. at p. 6-7. The LPLRA provides in pertinent part: "[t]he order granting a prisoner's request to proceed in forma pauperis automatically stays all proceedings, including any service of process, until all costs of court or fees due the clerk by the prisoner in this matter are paid. During the pendency of the stay the prisoner may not take any action to prosecute the suit, including but not limited to filing any pleadings, discovery, or motions other than a motion for voluntary dismissal or a motion to lift the stay because all court costs have been paid." La.R.S. 15:1186(B)(2)(a).
[9] *Id*. at p. 6.
[10] La. R.S. 15:1186(B)(2)(c).
[11] Doc. 34 at p. 8.

monthly payments were to be automatically forwarded to the court by the Centralized Inmate Banking Section for the LDPSC without further action by the Plaintiff.[12] Ballard alleges that on October 5, 2006, three days after the order was granted, he requested that Clerk Hendl provide him a regular statement of the payment of fees on his account.[13] Ballard claims that he needed this information in order to determine the balance owed, as well as whether to arrange a special payment above the 20 percent provision from his inmate account, which he contends would not be authorized by LDPSC without an invoice from the clerk.[14] Ballard also alleges that Clerk Hendl assessed his account an additional charge of $6 every time she received his written inquiries, as well as a $6 fee for every written response.[15]

Ballard asserts that in the three year period that he was allowed under the LPLRA to pay court costs and fees, his prison account totaled, at various times, $4,021.14.[16] Ballard alleges that during that time period, Clerk Hendl applied only $381.04 to his cost obligation despite having $804.23 (20 percent of his total prison account) available.[17] Ballard further alleges that between October 2, 2006 and February 25, 2013, shortly before he moved to lift the civil stay in his case and over six years after he was granted *in forma pauperis* status, Clerk Hendl applied $881 to

---

[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.* As will be discussed, *infra*, La. R.S. 13:841(A)(2) permits a clerk of court to charge fees related to the filing of documents. Specifically, the statute authorizes a clerk of court to assess a $6 fee to a party in a civil matter who is filing a one-page document, or being issued a one-page document.
[16] *Id.* at p. 9. Ballard claims that the total sum deposited into his prison account between October 2, 2006 and September 15, 2009, amounted to $4,021.14, which included $3,201.14 from outside sources and $820.00 in incentive wages.
[17] *Id.*

3

his cost obligation, despite having $1,996.77 available during the six year period.[18]

Ballard alleges that when he filed his Motion to Lift the Civil Stay in March of 2013, he was informed by Clerk Hendl that he still had an unpaid balance of $19.00 remaining on his account.[19] Ballard asserts that on March 18, 2013, he arranged a special payment from his inmate banking account to extinguish the $19.00 balance.[20]

On May 8, 2013, the defendants in Ballard's underlying suit filed a motion to dismiss for his failure to pay costs within three years, citing the LPLRA.[21] The state court granted the motion, dismissing Ballard's lawsuit on May 9, 2013.[22] Ballard alleges that he filed a Motion to Set Aside the Dismissal on May 31, 2013, which was ultimately denied; however, the denial came with a notation that a hearing on the issue would be set after the costs were paid.[23] Ballard contends that on August 15, 2013, in response to his inquiry, Clerk Hendl indicated in writing that he needed to pay his unpaid balance of $72.06 in costs before the motion to set aside could be adjudicated.[24] Ballard asserts that Clerk Hendl lacked legal justification to require prepayment of the filing fee for the motion to set aside the dismissal, given that $900.00 in advance fees had already been collected by Clerk Hendl from Ballard's prison account, and Ballard's *in forma pauperis* status should have relieved him of

---

[18] *Id.* Ballard claims that between October 2, 2006 and February 25, 2013 he received $8,414.29 in funds from outside sources and $1,569.60 in incentive wages, totaling $9,983.89, and twenty percent of that total equals $1,996.77.
[19] *Id.*
[20] *Id.*
[21] *Id.* at p. 10. *See* La. R.S. 15:1186(B)(2)(c).
[22] *Id.*
[23] *Id.*
[24] The parties have not provided any explanation or justification for the $72.06 unpaid balance.

the requirement to prepay any fees after his advance deposit was fully paid.[25] Ballard

also alleges that over $200 in filing fees incurred by the defendants in his underlying

lawsuit were charged to his account.[26]

On August 21, 2013, Ballard alleges that he forwarded a special payment of

$72.06 from his prison account to Clerk Hendl in satisfaction of his outstanding

balance, and requested that the motion to set aside be heard.[27] Ballard claims that

after forwarding the special payment of $72.06, Clerk Hendl advised him that he was

assessed another fee of $225.20, which had to be paid before the motion could be

forwarded to the court.[28] Ballard asserts that the motion has not been adjudicated to

this day.[29]

Ballard filed the instant lawsuit on September 16, 2015, alleging violations of

his constitutional rights against the 20th JDC, Judge Carmichael, and Clerk Hendl.[30]

In addition to filing his Verified Complaint, Ballard filed an Ex Parte Motion to

Proceed *In Forma Pauperis*, which was granted on November 2, 2015.[31]  On

November 5, 2015, Ballard filed an Amended Complaint, correcting a deficiency in

form that was identified in a Notice of Deficiency sent from the Court to Ballard,

dated October 30, 2015.[32]  On February 9, 2017, the Court granted Defendant 20th

---

[25] *Id.* at p. 11.
[26] *Id.* Ballard makes this assertion solely "on information and belief" and does not offer any additional support for his allegation.
[27] *Id.*
[28] *Id.* Hendl did not address the reasons for any additional assessment of fees in her *Motion to Dismiss*.
[29] *Id.*
[30] Doc. 1.
[31] Doc. 2 and Doc. 5.
[32] Doc. 6.

JDC's Motion to Dismiss but it did so without prejudice and allowed Ballard leave to amend.

On March 9, 2017, Ballard filed a Second Amended Complaint against Clerk Hendl only, omitting his previous claims against the 20th JDC and Judge Carmichael.[33] In his Second Amended Complaint, Ballard based his claim primarily on three actions allegedly taken by Clerk Hendl: (1) that she failed to collect the amounts required by the October 2, 2006 Order; (2) that she refused to provide Ballard with adequate notice of any deficiency in his account; and (3) that she unjustly refused to forward Ballard's motion to set aside dismissal to the district court until a pre-filing advance fee had been paid.

Ballard asserts that as a result of these actions, Clerk Hendl obstructed his right of meaningful access to the courts in violation of the First Amendment, the Privileges and Immunities Clauses of both Article IV and the Fourteenth Amendment, as well as the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Ballard further argues that as a result of Clerk Hendl's violation of his constitutional rights, his lawsuit languished and caused the complete extinguishment and forfeiture of his right to be compensated for the medical malpractice which cost him the use of his right eye. Ballard seeks an award of damages against Clerk Hendl as well as a declaratory judgment that the advance fee requirements of the LPLRA, as applied in the 20th JDC by Clerk Hendl, are unconstitutional under the First and Fourteenth Amendments.

---

[33] Doc. 34.

## II.    STANDARD OF REVIEW

### A.    RULE 12(b)(6) Legal Standard

At the motion to dismiss stage, the Court must accept the well-plead factual allegations in the complaint as true.[34] The Court views the complaint in the light most favorable to the plaintiff, resolving all doubts in his favor.[35] However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[36] The Court will not "strain to find inferences favorable to the plaintiff."[37] If the facts as plead allow the Court to conclude that plaintiff's claims for relief are "plausible," the motion must be denied.[38] To satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully."[39] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[40]

### B.    Rule 12(b)(1) Legal Standard

Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims.[41] Under Rule 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the

---

[34] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).
[35] *Tanglewood East Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1572 (5th Cir. 1988).
[36] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[37] *Taha v. William Marsh Rice Univ.*, Civ. Action No. H-11-2060, 2012 WL 1576099, *2 (S.D. Tex. May 3, 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353 (5th Cir. 2004)).
[38] *Twombly*, 550 U.S. at 570.
[39] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).
[40] *Id.*
[41] *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286-87 (5th Cir. 2012).

statutory or constitutional power to adjudicate" the claim.[42] A court should consider

a Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.[43]

Considering a Rule 12(b)(1) motion to dismiss first "prevents a court without

jurisdiction from prematurely dismissing a case with prejudice."[44]

In ruling on a Rule 12(b)(1) motion, "the court is permitted to look at evidence

in the record beyond simply those facts alleged in the complaint and its proper

attachments."[45] A motion to dismiss for lack of subject-matter jurisdiction should

only be granted if it appears certain that the plaintiff cannot prove any set of facts in

support of his claims entitling him to relief.[46] However, "[t]he burden of proof for a

Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction."[47] When a

district court finds it lacks subject matter jurisdiction, its determination is not on the

merits of the case, and does not bar the plaintiff from pursuing the claim in a proper

jurisdiction.[48]

## III. DISCUSSION

Clerk Hendl contends that this Court lacks subject matter jurisdiction over

Ballard's claims as they (i) are inextricably intertwined with the state court's denial

of relief in his underlying suit and are therefore barred by the *Rooker-Feldman*

---

[42] *Id.* (*Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).
[43] *Id.*
[44] *Id.*
[45] *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009); *see also Ramming*, 281 F.3d at 161 (holding that a court ruling on a 12(b)(1) motion may evaluate "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts").
[46] *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007).
[47] *Celestine v. Transwood, Inc.*, 467 F. App'x 317, 318 (5th Cir. 2012).
[48] *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam).

Doctrine; (ii) are barred by the Eleventh Amendment; and (iii) fail to meet the case

and controversy requirement under Article III of the Constitution and therefore lacks

standing.[49] Alternatively, Clerk Hendl argues that Ballard fails to state a claim upon

which relief can be granted as she is entitled to absolute quasi-judicial immunity.[50]

Finally, Clerk Hendl asserts that Ballard's claims are prescribed by the applicable

statute of limitations.[51]

### A.    Subject Matter Jurisdiction Claims

#### 1.    *Rooker-Feldman*

Clerk Hendl argues that this Court lacks subject matter jurisdiction over

Ballard's federal claim because it is inextricably intertwined with the 20th JDC's

dismissal of his underlying suit.[52] Clerk Hendl cites the *Rooker-Feldman* doctrine in

support of her contention.[53] The *Rooker-Feldman* doctrine is one of several doctrines

viewed as a safeguard against federal intrusion into the dual court system.[54]   In

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, the Supreme Court narrowed this

doctrine to specifically deprive federal district courts of jurisdiction in "cases brought

by state-court losers complaining of injuries caused by state-court judgments

rendered before district court proceeding commenced and inviting district court

review and rejection of those judgments."[55] The doctrine provides that jurisdiction to

review final judgments of a state court in judicial proceedings "lies exclusively with

---

[49] Doc. 39-1 at p. 2-4.
[50] *Id.* at p. 5.
[51] *Id.* at p. 6.
[52] *Id.* at p. 2.
[53] *Id.*
[54] *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 286 (1970).
[55] *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 281 (2005).

superior state courts and, ultimately, the United States Supreme Court."[56] As a result, the *Rooker-Feldman* Doctrine "interprets 28 U.S.C. § 1257 as ordinarily barring direct review in the lower federal courts of a decision reached by the highest state court, for such authority is vested solely in [the Supreme] Court.[57]

"*Rooker-Feldman* bars not only direct review of issues actually decided by the state court, but also consideration of those claims which are 'inextricably intertwined.'"[58] "The 'inextricably intertwined' prong on the doctrine bars a claim that was not actually decided by the state court but where 'success on the federal claim depends upon a determination that the state court wrongly decided the issues before it.'"[59] "[A] party losing in state court is barred from seeking in substance what would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights."[60] It should also be noted that "*Rooker-Feldman* is broader than claim and issue preclusion because it does not depend on a final judgment on the merits."[61]

The United States Court of Appeals for the Fifth Circuit has held that a court should carefully evaluate what it is asked to review and reject in determining whether to apply *Rooker-Feldman*.[62] "A court lacks jurisdiction only when the

---

[56] *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000) (quoting *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997)).

[57] *Asarco, Inc. v. Kadish*, 490 U.S. 605, 622 (1989).

[58] *Brown & Root*, 211 F.3d 198 (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 486-87 (1983)); *Plyler*, 129 F.3d at 731.

[59] *Id.* (citing *Plyler*, 129 F.3d at 731).

[60] *Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994).

[61] *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 n.1 (8th Cir. 1995).

[62] *Truong v. Bank of America., N.A.*, 717 F.3d 377, 382 (5th Cir. 2013) (citing *Exxon Mobil*, 544 U.S. at 284).

plaintiff 'seeks relief that directly attacks the validity of an existing state court judgment,' or, the plaintiff's federal claims 'are so inextricably intertwined with a state judgment that the federal court is in essence being called upon to review the state court decision.'"[63] The Supreme Court has made clear that *Rooker-Feldman* does not prohibit federal plaintiff from "present[ing] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party."[64]

Clerk Hendl's argument that Ballard's claims are barred under *Rooker-Feldman* is based in part on her mistaken assertion that Ballard seeks review and reversal of his state court judgment.[65] Ballard's allegations, however, in addition to his arguments in his opposition to the Motion to Dismiss, make clear that he is not contesting the validity of the state-court judgment dismissing his underlying suit.[66] Indeed, Ballard admits that "the state-court judgment will be left undisturbed by this civil action."[67] Ballard never alleges that the state-court judgment should be overturned or that the judgment dismissing his underlying suit is invalid.

Clerk Hendl also argues that Ballard's federal claims are "inextricably intertwined" with the underlying state-court judgment, thus triggering application of

---

[63] *Cain v. City of New Orleans*, 186 F. Supp. 3d 536, 552 (E.D. La. 2016) (citing *Weaver v. Tex. Capital Bank, N.A.*, 660 F.3d 900, 904 (5th Cir. 2011)); *Ill. Cent. R.R. Co. v. Guy*, 682 F.3d 381, 390-91 (5th Cir. 2012) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983)).

[64] *Exxon Mobil*, 544 U.S. at 293.

[65] *See* Doc. 39-1 at 3 (Hendl alleges: "Plaintiff's complaint establishes: (1) a judgment dismissing his suit was entered; (2) he alleges harm cause by a state-court judgment; (3) the state court judgment was rendered before he filed the instant suit; and (4) he seeks review and reversal of a state-court judgment.").

[66] *See* Doc. 34 and Doc. 47.

[67] Doc. 47.

*Rooker-Feldman*. Clerk Hendl cites to the Fifth Circuit decision in *Liedtke v. State Bar of Texas*,[68] to support her assertion. In that case, the plaintiff filed § 1983 suit in federal court after his appeal of a state court judgment disbarring him was rejected by the state appellate court and his application for writ of mandamus was denied by the state supreme court.[69] The Fifth Circuit held that his federal suit was properly dismissed for lack of subject matter jurisdiction after finding that the plaintiff's request for declaratory and injunctive relief preventing enforcement of the state court judgment was "inextricably intertwined" with the state-court judgment.[70]

The circumstances in this matter are unlike those in *Liedtke*. First, the plaintiff in *Liedtke* commenced his federal suit after he exhausted all avenues of appeal at the state level. Ballard's motion to set aside the dismissal, on the other hand, is still pending in state court.[71] More importantly, however, is that the plaintiff in *Liedtke* urged the federal court to provide injunctive relief preventing the state court from enforcing its order of disbarment.[72] The relief requested would have required the federal court to review and pass judgment on the rulings made by the state court. Hence, the Fifth Circuit held that "Liedtke's request for declaratory and injunctive relief, stripped to its essentials, was an attack on the judgment of the state district court."[73]

---

[68] 18 F.3d 315.
[69] *Id.* at 316-318.
[70] *Id.* at 318.
[71] Doc. 34 at ¶ 73.
[72] *Liedtke*, 18 F.3d at 318.
[73] *Id.*

In this case, Ballard seeks damages and declaratory relief against Clerk Hendl

for her alleged violation of his right of access the courts, an issue separate and distinct

from the validity of the judgment itself.  Ballard's federal claim does not seek relief

that "directly attacks the validity of the state-court judgment."[74]  Because a claim

that Clerk Hendl violated his constitutional rights of access to the courts "does not

ask the district court to review, modify, or nullify, a final order of a state-court, [this

claim is] not barred under the *Rooker-Feldman* doctrine."[75]

### 2.     *Eleventh Amendment Sovereign Immunity*

Next, Clerk Hendl argues that, as a state official being sued in her official

capacity, she is immune from suit under the doctrine of Eleventh Amendment

sovereign immunity.[76]  The Eleventh Amendment of the United States Constitution

provides:

> The Judicial power of the United States shall not be construed to extend
> to any suit in law or equity, commenced or prosecuted against one of the
> United States by Citizens of another State, or by Citizens or Subjects of
> any Foreign State.[77]

This language specifically precludes an action brought against a state by citizens of

another state, but the same principle has also been extended to suits against a state

by citizens of that same state.[78]  The Fifth Circuit has held that "a state's Eleventh

---

[74] *Cain*, 186 F.Supp.3d at 552.
[75] *Mosley, v. Bowie Cty. Tex.*, 275 Fed. Appx. 327, 329 (5th Cir. 2008) (quoting *Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000)).
[76] Doc. 39 at p. 4.
[77] U.S. Const. Amend. XI.
[78] *Hans v. Louisiana*, 134 U.S. 1 (1890); *Papasan v. Allain*, 478 U.S. 265, 276 (1986); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).

Amendment immunity extends to any state agency or entity deemed an alter ego or arm of the state."[79]

The Eleventh Amendment also precludes a suit against a state official when "the state is a real, substantial party in interest."[80] The Fifth Circuit has adopted the general rule that relief sought against an officer is in fact against the sovereign if the decree would operate against the latter. And, as when the state itself is named as the defendant, a suit against state officials that is in fact a suit against a state is barred regardless of whether it seeks damages or injunctive relief.[81]

In the instant case, however, there is no need for the Court to examine whether Ballard's suit against Clerk Hendl, in her official capacity as Clerk of Court of the 20th JDC, is precluded by the Eleventh Amendment. In Louisiana, the Clerk of Court is classified as a political official of the local governmental subdivision wherein her office lies, namely the parish.[82] Although political subdivisions, such as parishes, exist at the behest of the state, the Eleventh Amendment affords them no protection.[83] Because the Clerk of Court is a parish official, as opposed to a state official, she is not entitled to the protection of the Eleventh Amendment.[84]

---

[79] *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002).

[80] *Pennhurst*, 465 U.S. at 101-02 (citations omitted).

[81] *Id.*; *see also Okpalobi v. Foster*, 244 F.3d 405, 412 (5th Cir. 2001) (plaintiff cannot evade Eleventh Amendment immunity by naming an individual state officer as a defendant in lieu of the state itself).

[82] *Gegenheimer v. Galan*, 920 F.2d 307, 311 (5th Cir. 1991) (citing *Bulot v. Justice*, 552 So.2d 1344, 1346-47 (La. App. 5th Cir. 1989), *writ denied*, 558 So.2d 1124 (La. 1990)).

[83] *See Port Authority Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 313 (1990); *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 400 (1979).

[84] *See Gegenheimer*, 920 F.2d at 311.

14

### 3. Article III Standing

Clerk Hendl asserts that Ballard lacks the requisite standing to meet the case and controversy requirement in Article III of the Constitution.[85] Clerk Hendl's argument is based on her assertion that she is not a proper party defendant and, alternatively, that she is without authority to provide the declaratory relief that Ballard seeks.[86] Ballard argues that he does have standing and that Clerk Hendl is a proper defendant.[87]

"The requirement that a claimant have standing is an essential and unchanging part of the case-or-controversy requirement of Article III."[88] "To qualify for standing, a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling."[89] An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."[90] Article III standing to bring an equal protection challenge is not without limits. The rule that a plaintiff must assert a particularized injury, rather than a generalized grievance, "applies with as much force in the equal protection context as in any other."[91]

Here, Clerk Hendl's assertion that she is not a proper party defendant is premised on the theory that she is entitled to Eleventh Amendment immunity from

---

[85] Docs. 22-2 at p. 7 and 39-1 at p. 4.
[86] *Id.*
[87] Doc. 47 at n.32.
[88] *Nat'l Fed'n of the Blind of Texas, Inc. v. Abbott*, 647 F.3d 202, 208 (5th Cir. 2011).
[89] *Id.*, at 208-209.
[90] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).
[91] *United States v. Hays*, 515 U.S. 737, 743 (1995).

suit. As the Court has addressed, Clerk Hendl is not entitled to Eleventh Amendment immunity, because as Clerk of Court for the 20th JDC, she is a parish official, not state official. Hence, Clerk Hendl's assertion that Ballard lacks standing because, under the Eleventh Amendment, she is afforded immunity from suit and thus not a proper party defendant, is denied.

Alternatively, Clerk Hendl asserts, without explanation, that Ballard lacks standing because she is without authority to provide the declaratory relief that he seeks.[92] This argument also fails. Ballard's Second Amended Complaint seeks a declaration from this Court that the implementation of the LPLRA through Clerk Hendl's policies as outlined in the Complaint, violate his Constitutional rights under the First and Fourteenth Amendments. As alleged in his Second Amended Complaint, the allegations against Clerk Hendl meet all of the standing requirements proscribed above. Accordingly, Clerk Hendl's assertion that Ballard lacks the requisite standing to bring this suit against her is without merit. Clerk Hendl's request to dismiss for lack of standing is denied.

B.     **Absolute Quasi-Judicial Immunity**

Clerk Hendl also argues that the instant suit should be dismissed because Ballard fails to state a claim upon which relief can be granted because she is entitled to absolute "quasi-judicial" immunity for her refusal to process Ballard's pleadings pursuant to the prepayment of fees requirements of the LPLRA. The Fifth Circuit has held that "[o]fficial capacity suits 'generally represent another way of pleading

---

[92] Doc. 39-1 at 4.

an action against an entity of which an officer is an agent.'"[93] "Accordingly, a § 1983 suit naming defendants only in their "official capacity" does not involve personal liability to the individual defendant. Concomitantly, defenses such as absolute quasi-judicial immunity, that only protect defendants in their individual capacities, are unavailable in official-capacity suits."[94]

The Supreme Court has twice clarified this distinction, first in *Kentucky v. Graham*, and again in *Hafer v. Melo*, finding in both instances that immunity was inapplicable in § 1983 suits against government officials in their official capacity.

> As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.[95]

To support her assertion that she is entitled to absolute quasi-judicial immunity, Clerk Hendl cites several cases supporting the notion that clerks of court acting in a nonroutine manner under command of court decrees or under explicit

---

[93] *Turner v. Houma Mun. Fire and Police Civil Service Bd.*, 229 F.3d 478, 483 (5th Cir. 2000) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)); *see also Johnson v. Kegans*, 870 F.2d 992, 998 n.5 (5th Cir. 1989) ("immunity does not bar suit against defendants in their official capacities"); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999).

[94] *Id.*; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[T]he only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses"); *see also Johnson v. Kegans*, 870 F.2d 992, 998 n.5 (5th Cir. 1989) ("Immunity does not bar suits against defendants in their official capacities."); *Burge*, 187 F.3d at 466.

[95] *Graham*, 473 U.S. at 166 (citations omitted); *see also* Hafer, 502 U.S. at 25 (reiterating the reasoning of Graham); *Burge*, 187 F.3d at 466 ("Unlike government officials sued in their individual capacities, municipal entities and local governing bodies do not enjoy immunity from suit, either absolute nor qualified, under § 1983").

17

instructions of a judge are afforded absolute immunity.[96] These cases, however, are distinguishable from the instant case in that none of the defendant clerks who were afforded quasi-judicial immunity in the cases cited by Clerk Hendl, was sued in their official capacity. Unlike Clerk Hendl, who is being sued in her official capacity, each clerk who successfully asserted a quasi-judicial immunity defense was sued in his or her individual capacity.

The Court finds that Ballard has brought his action against Clerk Hendl in her official capacity as Clerk of Court for the 20th JDC. In his Second Amended Complaint, Ballard named Clerk Hendl her official capacity.[97] Although Ballard's complaint does make an isolated reference to Clerk Hendl in her individual capacity, this single instance is not supported within the factual allegations enough to conclude that Ballard sued Clerk Hendl in her individual capacity.[98] Accordingly, because Clerk Hendl is being sued in her official capacity, she is not entitled to assert absolute quasi-judicial immunity from suit. For these reasons, Clerk Hendl's motion to dismiss Ballard's suit for failure to state a claim upon which relief can be granted because she is entitled to absolute quasi-judicial immunity is denied.

---

[96] Doc. 39-1 at 5. (*Weaver v. Thomas*, 399 F.Supp. 615, 617 (S.D. Tex 1975) (Clerk refusing to file a writ application where the applicable filing fee was unpaid was entitled to absolute immunity); *Williams v. Wood*, 612 F.2d 982, 985 (5th Cir. 1980) ("The rationale is that…the clerk of court acts as the arm of the judge and comes within his absolute immunity."); *Vinson v. Benson*, 235 F.3d 1342 (5th Cir. 2000) (Clerk entitled to absolute immunity in an § 1983 suit)).

[97] Doc. 34 at p. 3. ("Hon. Felicia Ann Hendl, Clerk of Court for the 20th Judicial District of Louisiana, is sued in her official capacity.").

[98] *Id.* at ¶ 96.

C. **Statute of Limitations**

Finally, Clerk Hendl argues that the Court should dismiss Ballard's § 1983 claim on the grounds that it is barred by the applicable statute of limitations.[99] It is well settled that the "statutes of limitations for § 1983 . . . claims are the same as the statute of limitations in a personal injury action in the state in which the cause of action arose."[100] Under Louisiana law, the applicable statute of limitations for personal injury actions is one year.[101] While courts borrow the forum state's statute of limitations in a § 1983 action, federal law governs when a cause of action accrues.[102] "Under federal law, the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured."[103] "A plaintiff's awareness encompasses two elements: (1) The existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions."[104]

Clerk Hendl argues that Ballard's claim began to accrue on August 15, 2013, when Clerk Hendl told Ballard that he owed an additional $72.06 before his motion to set aside could be adjudicated.[105] Ballard argues that his claim has not accrued *at all* because the state court has not ruled on his motion to set aside dismissal.[106] By way of background, Ballard alleges that his state court suit was dismissed on May 9,

---

[99] Doc. 39-1 at p. 6.
[100] *Smith v. Humphrey*, 540 Fed. Appx. 348, 349 (5th Cir. 2013) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)).
[101] La. Civ. Code Ann. art. 3492.
[102] *Wallace*, 549 U.S. 384, 388 (2007).
[103] *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995).
[104] *Id.* (citing *Stewart v. Parish of Jefferson*, 951 F.2d 681, 684 (5th Cir.)).
[105] Doc. 39 at p. 6.
[106] Doc. 47 at p. 10.

2013 for failure to pay costs within three years under La. R.S. 15:1186(B)(2)(c).[107]

Ballard alleges that he moved to set aside the dismissal on May 31, 2013.[108] The

motion to set aside the dismissal was denied, with a notation that a hearing on the

issue would be set "after costs paid."[109] Ballard alleges that Clerk Hendl then wrote

him on August 15, 2013, saying that an additional $72.06 was due in costs before the

motion to set aside could be adjudicated.[110] After paying the $72.06, Ballard again

requested that the motion to set aside be heard.[111] To date, Ballard alleges that the

motion to set aside has not been adjudicated.[112]

 The problem with Ballard's argument is that he contends that the accrual of

the statute of limitations turns on the fact that his motion to set aside the dismissal

is still pending.[113] But "the limitations period begins to run the moment the plaintiff

becomes aware that he has suffered an injury or has sufficient information to know

that he has been injured."[114] Here, Ballard alleges that he was injured by Clerk

Hendl's actions, and not the state court's action. And the last action taken by Clerk

Hendl that deprived him of any arguable rights to access the courts occurred on

August 15, 2013, when the Clerk wrote Ballard to inform him that he owed an

additional $72.06 before his motion to set aside the dismissal could be adjudicated.[115]

Ballard makes clear that it is Clerk Hendl's actions that he is challenging. He claims

---

[107] Doc. 34 at ¶55.
[108] *Id*. at ¶56.
[109] *Id*. at ¶58.
[110] *Id*. at ¶59.
[111] *Id*. at ¶71.
[112] *Id*. at ¶73.
[113] See Doc. 47 at p. 9.
[114] *Piotrowski*, 51 F.3d at 516.
[115] Doc. 34 at ¶ 59.

that as a direct result of Clerk Hendl's actions, his state court suit "has languished from August 2013, the date on which the motion to set aside dismissal should have been submitted by Clerk Hendl to the district judge, until the present."[116]

Ballard also claims that his damages stem entirely from Clerk Hendl's actions. He claims that "[a]s a direct and proximate result of the actions, customs and policies of *Clerk of Court Felicia Clerk Hendl*, Plaintiff Joseph Ballard has suffered" nominal damages by being deprived of access to the courts, extreme delay of the litigation of his malpractice lawsuit, and the loss of his right to full compensation for his eye injury.[117] Because Ballard challenges only the actions and policies of Clerk Hendl, the fact that the state court has not adjudicated his motion for dismissal is irrelevant to the accrual of his statute of limitations. Ballard's action therefore accrued on August 15, 2013, when the Clerk wrote Ballard to inform him that he owed an additional $72.06 before his motion to set aside the dismissal could be adjudicated.[118] Accordingly, the one year statute of limitations period ended one year later on August 15, 2014. Ballard did not file this action until September 16, 2015, which is thirteen months after the statute of limitations on his § 1983 claims expired. Therefore, the Court finds that Ballard's claims are time-barred.

---

[116] *Id.* at ¶117.
[117] Doc. 34 at ¶ 120-127.
[118] *Id.* at ¶59.

## IV.   CONCLUSION

Although the Court must dismiss this action because it is time-barred, the Court is nonetheless troubled by Ballard's allegations.  It appears that Clerk Hendl impeded Ballard's ability to pursue his malpractice claim in state court under the guise of the Louisiana Prison Litigation Reform Act, even though Ballard attempted to comply with the Clerk's requests on several occasions.  Access to the courts is a fundamental constitutional right, and all public officials should conscientiously protect and promote this right.

Accordingly,

**IT IS ORDERED** that the **Motion to Dismiss Verified Complaint and Second Amended Complaint (Doc. 39)** is **GRANTED**.

Baton Rouge, Louisiana, this 30th day of March, 2018.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**